FILED

2016 Jun-27 PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| RANDY BOWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 7:15-cv-01318-JHE |
| | ) | |
| HODGE MANAGEMENT GROUP, LLC, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Randy Bowman ("Bowman") initiated this action in the Circuit Court of Tuscaloosa County in Tuscaloosa, Alabama, against defendants Hodge Management Group, LLC ("Hodge Management"), Jerry Hodge ("Hodge"), Bank of America, N.A. ("BOA"), Air Bear, Inc. ("Air Bear"), and Bryan Daniel ("Daniel") asserting state law claims for breach of contract, fraudulent misrepresentation, unjust enrichment, quantum meruit, intentional interference with business relations, and conspiracy based on the sale of an aircraft for which Bowman claims he is owed a commission. (*See* doc. 1-1).   After the defendants removed the action to this court, (doc.1), and the undersigned denied Bowman's motion to remand, (doc. 10), the defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and, alternatively, moved to transfer the case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).  For the reasons stated more fully below, the motion, (doc. 12), is **DENIED**.

# I. Standard of Review

## A.  Personal Jurisdiction

For purposes of the personal jurisdiction analysis, this court adheres to the burden-shifting framework adopted by the Eleventh Circuit.  The plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted).  "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.*  (citations and internal quotation marks omitted).  "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.*  (citations omitted). And, although the plaintiff bears the ultimate burden of establishing jurisdiction,  *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009), "[w]hen there is a battle of affidavits placing different constructions on the facts, the court is inclined to give greater weight, in the context of a motion to dismiss, to the plaintiff's version . . . ," particularly when "the jurisdictional questions are apparently intertwined with the merits of the case[.]" *Delong Equip. Co. v. Washington Mills Abrasive Co*., 840 F.2d 843, 845 (11th Cir. 1988).  Therefore, a plaintiff need not conclusively prove the facts necessary for the assertion of personal jurisdiction. Rather, []he must present enough evidence to create a jury question. *Mayville v. Glatkowski*, No. 1:08-CV-232TWT, 2008 WL 2037155, at *3 (N.D. Ga. May 8, 2008).

## B.  Section 1404 Transfer of Venue

Section 1404(a) provides "[f]or convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought . . . ."  28 U.S.C. § 1404(a).  The decision to transfer a case to another district is within the sound discretion of the trial court.  *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991).  When exercising its discretion, the court should undertake an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Resolution of a §1404(a) motion is a two-step process.  First, the court must determine whether the action could "originally have been brought in the proposed transferee district court," then, the court must determine whether the action should be transferred "for the convenience of the parties [and] in the interest of justice."  *C.M.B. Foods, Inc. v. Corral of Middle Ga.*, 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005) (quoting *Folkes v. Haley*, 64 F. Supp. 2d 1152, 1155 (M.D. Ala. 1999)); *see also A.J. Taft Coal Co., Inc. v. Barnhart*, 291 F. Supp. 2d 1290, 1309 (N.D. Ala. 2003).  The party seeking transfer has the burden of establishing that an alternative forum is more appropriate.  *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 503 (M.D. Ala. 1994).

## II. Procedural and Factual Background

In the complaint, Bowman alleges he is owed a commission on the sale of an aircraft by defendant Bank of America to defendants Hodge, Daniel, Hodge Management, and Air Bear. (Doc. 1-1).  Bowman further alleges he is an resident of Tuscaloosa, Alabama, and that "[o]n or about September 2014, Mr. Daniel contacted Mr. Bowman on behalf of Hodge Management, Mr. Hodge, and Air Bear, Inc. and requested Mr. Bowman's services as an aircraft broker. Specifically, Hodge Management, Mr. Hodge, Air Bear, and Mr. Daniel (collectively, the "Clients") wanted Mr. Bowman's assistance in both purchasing a new aircraft and selling two of

Hodge Management's and/or Air Bear's existing aircrafts." (Doc. 1-1 at ¶3, ¶9). Defendants' motion challenges the allegation that each defendant "procured business services from within Tuscaloosa County." (*See* doc. 12).

In support of its motion to dismiss for lack of personal jurisdiction, the defendants submit three exhibits: the affidavit of Jerry Hodge (doc. 12-1); Articles of Association for Bank of America (doc., 12-2); the affidavit of Bryan Daniel (doc. 12-3). This evidence sets forth the following:

Hodge Management is a limited liability company incorporated in Texas and maintains its principal place of business and headquarters in Amarillo, Texas. (Doc. 12-1 at 3). Hodge Management conducts all of its business in the State of Texas. (*Id.*). Hodge Management does not maintain any offices in Alabama. (*Id.*). It does not have any officers, employees, agents, members, or representatives in Alabama. (*Id.*). It's only members are Jerry and Margaret Hodge who are husband and wife and residents of Amarillo, Texas. (*Id.*). It does not have any bank accounts or assets in Alabama; it is not registered to conduct business in Alabama; it does not advertise or solicit business in anyway in Alabama; it is not required to pay taxes in the State of Alabama. (*Id.*).

Jerry Hodge is an individual citizen and resident of the State of Texas. (Doc. 12-1 at 2). He has no personal connection to Alabama. (*Id.*). He maintains no property or assets in Alabama; has never conducted any business in Alabama; has no agents or representatives in Alabama; and pays no taxes in Alabama. (*Id.* at 2-3).

Bank of America is a national banking association with its principal place of business and main office in the State of North Carolina. (Doc. 12-2). It is a citizen of the State of North Carolina. (*Id.*). It has no officers or ATMs in Alabama (*Id.*). Furthermore, the technical party

of the contract at issue in this litigation is a Bank of America subsidiary known as Banc of America Leasing & Capital, LLC ("BALCA").  (Doc. 12 at 4).  BALCA is a single-member LLC, and Bank of America is the sole member.  (*Id.*).  Its principal place of business and headquarters are in San Francisco, California.  (*Id.*).

Air Bear is a foreign corporation organized and existing under the laws of the State of Texas, with its principal place of business in Amarillo, Texas.  (Doc. 12-1 at 3).  It is a citizen of the State of Texas.  (*Id.*).  Air Bear exists for the purpose of owning two airplanes and one hangar located in Amarillo, Texas.  (*Id.*).  It has no assets in Alabama; it does not conduct or solicit business in Alabama; it has no employees, owners, stockholders, members or agents in Alabama; it does not advertise in Alabama; it pays no taxes in Alabama.  (*Id.*).

In his affidavit, Bryan Daniel states the following:  He is an individual citizen of the State of Texas.  (Doc. 12-3).  He lives in Amarillo, Texas and owns no property in Alabama and has never resided in Alabama.  (*Id.*).  Daniel has no assets in Alabama and has no conducted business in Alabama.  (*Id.*).  Daniel is employed by Hodge Management as a pilot. (*Id.*). He was the principal contact for the purchase of the aircraft that is the subject of this litigation.  (*Id.*).  At no time did he contact the plaintiff in Alabama for the purpose of obtaining the aircraft.  (*Id.*).  The plaintiff initiated contact with Danial on numerous occasions.  (*Id.*).  Any past dealings with the plaintiff were in his capacity as an employee of a company called Express Jets.  (*Id.*).

In response to the defendants' affidavits, Bowman submits an affidavit in which he states he is an aircraft broker with around thirty years of experience, and that, as an aircraft broker, he serves as an agent for either the buyer or seller of aircrafts.  (Doc. 13-1 at ¶2).  Bowman is employed by Skyland Aviation, Inc., an Alabama company.  (*Id.* at ¶3).  Bowman further states that in late 2014, Daniel contacted him in Tuscaloosa, Alabama about Hodge Management/Air

Bear's interest in purchasing a Canadair Challenger 300 aircraft.  (Doc. 31-1 at ¶9).  In response

to this request, Bowman states he located a specific Challenger 300 aircraft that Bank of America

had for sale ("BOA aircraft"), which is the subject of this litigation, and introduced the BOA

aircraft to Daniel and Hodge Management/Air Bear and provided them with information about

the BOA aircraft.  (*Id.* at ¶¶9-10*.*).  Specifically, Bowman explains that, acting as Hodge

Management/Air Bear's broker, he began to seek more specific information about theBOA

aircraft and contacted Bank of America to arrange a showing of the aircraft for Hodge

Management/Air Bear.  (*Id.* at ¶11).  The evidence Bowman provides supports his allegations

that, based on Daniel's request, he initiated contact with Leading Edge Aircraft Sales ("LEAS"),

an agent for the BOA aircraft and that Bowman and LEAS began negotiating

Hodge/Daniel/Hodge Management/Air Bear's purchase of the BOA aircraft.  (Doc. 1-1 at ¶16;

doc. 13-1 at 9-13).

   In his affidavit, Bowman also states Hodge later caused Hodge Management/Air Bear to

purchase the aircraft directly from Bank of America.  (*Id.* at ¶12).  Bowman also alleges Bank of

America knew about the contract for a broker's commission and his business relationship with

Hodge/Hodge Management/Daniel/Air Bear and intentionally interfered therewith by aiding

them in cutting Bowman out of the sale without justification.  (Doc.1-1 at ¶&39-42).  After

learning about the sell, Bowman expressed his concerns to Daniel, but Hodge and Bank of

America negotiated the sale of the aircraft and refused to pay Bowman any commission.  (Doc.

13-1 at ¶¶13-14).   Bowman also submitted an email exchange he had with Daniel on April 20

and 21, 2015.  (Doc. 13-1 at 26-27).  On April 20, 2015, Bowman emailed Daniel with

information about the BOA aircraft and the status of negotiations.  (*See id.*).  The next day,

Daniel responded as follows:

Hey.

I'm in the air now.  But Jerry [Hodge] and Matt struck a deal directly on Friday.  I know you will be upset.  But unfortunately this is out of my control.  I have [sic] keep by bosses [sic] priorities and needs first when it comes to our flight department.  I'm very sorry for the way this played out for sure.  I will be in touch later today.

Thanks.
Bryan Daniel

(*Id.* at 26).

### III. Analysis

#### A. Defendants have not waived the issue of personal jurisdiction.

As an initial matter, Bowman's argument that the defendants waived their right to challenge personal jurisdiction, (*see* doc. 13 at 7-8), is not supported by the Federal Rules of Civil Procedure.  This is the defendants' first motion to dismiss and no responsive pleadings have been filed.  *See* FED. R. CIV. P. 12(g), (h).  Although the defendants did not timely respond to the complaint as outlined by Rule 81(c)(2), nothing in the Rules indicates waiver is the necessary consequence.  To the contrary, the consequence for failure to timely answer or otherwise respond to a complaint is the possibility of the entry of default, and Bowman never moved for entry of default as to any of the defendants.  *See* FED. R. CIV. P. 55(a).  Instead, Bowman acknowledged that the defendants would be filing a motion to dismiss in the report of parties' planning meeting filed on October 13, 2015.  (*See* doc. 9).

Furthermore, *Saverese v. Edrick Transfer Storage, Inc.*, 513 F.2d 140 (9th Cir. 1975), the case upon which Bowman relies, is not controlling and is easily distinguishable.  In *Saverese*, the defendant did not raise the personal jurisdiction issue in the district court or in his opening appellate brief.  *Id.* at 145.  In that case, the district court clerk had entered default against the defendant, and the defendant had filed a motion to set aside the default and a motion for relief from judgment with no mention of the personal jurisdiction argument.  *Id.*  By contrast, in this

case, the defendants raised the issue of personal jurisdiction in their first responsive pleading as required by Rule 12(h).  Bowman never moved for an entry of default against any defendant, and no defaults were entered.  As noted above, Bowman actually acknowledged the "forthcoming motion to dismiss," as much of the report of parties' planning meeting filed on October 13, 2015, is predicated on the resolution of such a motion.  (*See* doc. 9).

The Eleventh Circuit has held that personal jurisdiction may be raised at least as far as a motion to set aside default.  *See Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 854 (11th Cir. 2010) ("A defendant normally only waives a personal jurisdiction defense if he or she has entered an appearance or was involved in overt wrongdoing to deceive the court and avoid service of process.  In this case, however, none of these circumstances are present and a defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding. This is particularly true in this case where the court must determine whether the constitutional requirements of minimum contacts are satisfied.") (internal citations and quotation marks omitted).  Accordingly, there is no basis to conclude the defendants waived their right to assert lack of personal jurisdiction as a defense.

**B. The Parties Have Submitted Conflicting Evidence on the Issue of Personal Jurisdiction Such That the Motion to Dismiss is Due to be DENIED.**

"A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a court of that state."  *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355 (11th Cir. 2000).  "Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution."  *Id.* at 1355-56 (citing *Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993)); *see also* ALA. R. CIV. P. 4.2(b).  The Fourteenth Amendment's due

8

process clause generally "permits a court to summon a non-resident to defend himself in the forum so long as that person has some 'minimum contacts' with that state, and the exercise of personal jurisdiction over the defendant would not offend 'traditional notions of fair play and substantial justice.'" *Ruiz de Molina*, 207 F.3d at 1356 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 392 (11th Cir. 1988)).

There are two types of personal jurisdiction – "general" and "specific." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, – U.S. – , 131 S. Ct. 2846, 2853 (2011). General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation. *Helicopteros Nacionales de Colombia, N.A. v. Hall*, 466 U.S. 408, 414 nn. 8 & 9; *see also Madara*, 916 F.2d at 1516 n.7. Regardless of whether jurisdiction is specific or general, a defendant's contacts with the forum state must be "purposeful." *Butler v. Beer Across Am.*, 83 F. Supp. 2d 1261, 1265 (N.D. Ala. 2000). A defendant must have "purposefully avail[ed] itself to the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Bowman has not alleged the defendants are subject to general personal jurisdiction, and the facts do not show that their contacts with Alabama amount to the kind of "continuous and systematic" contacts that are required support general personal jurisdiction. *See Bulter*, 83 F. Supp. 2d at 1264 ("General jurisdiction may be exercised when a defendant's contacts with the forum are sufficiently numerous, purposeful, and continuous, as to render fair an assertion of power over the defendant by the state's courts no matter the nature or extent of the relationship to the forum entailed in the particular litigation . . . ."); *see also Helicopteros*, 466 U.S. at 414 n.9. Instead, if the Court has personal jurisdiction over any of the defendants, it will be specific

personal jurisdiction—arising from the defendant's contacts with the forum state that are related to this litigation.

Generally, for the court to assert specific personal jurisdiction, a defendant's contacts with the forum state must satisfy three criteria: (1) the contacts must be related to the cause of action or have given rise to it; (2) the contacts must involve an act by the defendant by which he purposefully avails himself of the privilege of conducting activities within the forum; and (3) the contacts must be such that the defendant should reasonably anticipate being haled into court there.  *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007)).

1.  Minimum Contacts: Daniel, Hodge Management, and Air Bear

Daniel, Hodge Management, and Air Bear's contact(s) with Alabama satisfy the Eleventh Circuit's three-party minimum contacts analysis.  Specifically, Bowman submitted evidence that in 2014, Daniel, a pilot employed by Hodge Management, contacted him in Tuscaloosa, Alabama, about Hodge Management/Air Bear's interest in purchasing the aircraft that is the subject of this litigation.  (Doc. 13-1 at 3, ¶9).  Bowman and Daniel had maintained a business relationship after Bowman provided Daniel and Hodge Management with information about aircrafts that led to Hodge Management's purchase of an aircraft in 2011 or 2012.  (*Id.* at ¶¶4-7). Based on the 2014 phone call, Bowman contends he began acting as Hodge Management/Air Bear's broker and provided Daniel with information about the aircraft that is the subject of this litigation.  (*Id.* at ¶¶9-11).  Although Daniel submitted a conflicting affidavit, stating he never called Bowman in 2014, at this stage of the litigation, the court must construe all reasonable inferences in favor of the plaintiff.  *Diamond Crystal Brands, Inc.*, 593 F.3d at 1257.  This telephone call meets the first "minimum contacts" requirement because it is related to this action. *See Sloss Indus. Corp.*, 488 F.4d at 925.  The central allegation in this lawsuit is that the

defendants owe Bowman a commission on the sale of the aircraft Bowman found as a result of Daniel's 2014 telephone call.  This telephone call also meets the second criteria, as it is an intentional and purposeful availment to the privileges of the forum state.  *Id.*  Specifically, this telephone call shows these defendants intentionally and purposefully initiated a business relationship with a broker in Alabama, who works for an Alabama company, to advance their interests—buying an aircraft.  Bowman's involvement in the potential transaction was not the result of fortuitous, attenuated, or a random contact, but was the result of Daniel's phone call on behalf of Hodge Management/Air Bear.  As defendants point out, the issue of initiating contact is of particular significance, *see Ex parte City Boy's Tire & Brake, Inc.*, 87 So.3d 521, 532 (Ala. 2011) ("Of particularly relevance [to the specific personal jurisdiction analysis] is whether the plaintiff initiated the sale or contact."); (doc. 14 at 5), and based on the posture of this case, the evidence is viewed in the light most favorable to the plaintiff.

Finally, although none of the defendants had a physical presence in Alabama, based on Daniel's phone call about looking for an aircraft for Hodge Management/Air Bear to purchase, it is reasonable to conclude that Daniel, Hodge Management, and Air Bear should have foreseen that they could be haled into court in Alabama based on a dispute arising from the purchase of the aircraft. *See Corporate Waste Alternatives, Inc. v. McLane*, 896 So. 2d 410, 413 (Ala. 2004); *Wenger Tree Serv. V. Royal Ruck & Equipment, Inc.*, 853 So. 2d 888, 896 (Ala. 2002) (stating that a nonresident defendant "should reasonably anticipate being haled into court" where its commercial efforts are "purposefully directed" toward a resident of another state). Furthermore, Daniel's phone call was not an isolated occurrence, but the initiation of a chain of events that resulted in Bowman providing Daniel (and Daniel providing Hodge Management and Air Bear) with information about the subject aircraft.

11

2.  Minimum Contacts: Hodge and Bank of America

Bowman argues Hodge and Bank of America are subject to personal jurisdiction in Alabama, not because they have direct contacts with Alabama, but because they conspired with Daniel, Hodge Management, and Air Bear to harm him, an Alabama resident.  (Doc. 13 at 11-12).  "Alabama courts have recognized that, in an appropriate case, specific jurisdiction can be based upon the purposeful conspiratorial activity of a nonresident defendant aimed at an Alabama plaintiff."  *Ex parte Alamo Title Co.*, 128 So. 3d 700, 713 (Ala. 2013) (citing *Ex prate Reindel*, 963 So. 2d 614, 622-24 (Ala. 2007) and *Ex parte Barton*, 976 So. 2d 438, 443-44 (Ala. 2007)).  To establish personal jurisdiction under a conspiracy theory, "the plaintiff must plead with particularity 'the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy.'"  *Id.* (quoting *Ex parte McInnis*, 820 So. 2d 795, 806-07 (Ala. 2001)) (some quotation marks omitted).  The elements of civil conspiracy in Alabama are: (1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means. *Luck v. Primus Auto. Fin. Servs., Inc*., 763 So. 2d 243, 247 (Ala. 2000).  Although "the conspiracy averments . . . must exceed "bald speculation" and mere conclusory assertions, the burden is not heavy, especially "[w]hen determination of the jurisdictional facts is intertwined with and may be dispositive of the questions of ultimate liability."  *Ex parte Reindel*, 963 F.3d 614, 623 (Ala. 2007) (quoting *McLaughlin v. Copeland*, 435 F. Supp. at 513, 530 (D. Md. 1977)).

As noted above, Bowman presents evidence that in 2014, Daniel, a pilot employed by Hodge Management, contacted him in Tuscaloosa, Alabama, about Hodge Management/Air Bear's interest in purchasing an aircraft.  (Doc. 13-1 at 3, ¶9).  Hodge and his wife are the sole members of Hodge Management, and Hodge is the president of Air Bear.  (Doc. 21-1 at 3).

Bowman further states that, based on this call, he located a specific aircraft and introduced the aircraft to Daniel, Hodge Management, and Air Bear.  (Doc. 13-1 at ¶10).  Bowman presents an email he received from Daniel as evidence of the alleged conspiracy.  (*See* doc. 13 at 11-12). The email states that "Jerry [Hodge] and Matt struck a deal directly on Friday.  I know you will be upset. . . ."  (Doc. 13-1 at 26).   And Bowman further states that Hodge caused Hodge Management and Air Bear to purchase the aircraft directly from Bank of America so as to avoid paying him a commission.  (Doc. 13-1 at ¶13).

Under the standard articulated in *Ex parte Reindel* and the Alabama cases cited above, Bowman's allegations and evidence are sufficient as they relate to Hodge.   There is evidence, which if believed, show (1) concerted action by two or more persons (Daniel, Hodge, Hodge Management, and Air Bear); (2) to unlawfully deprive Bowman of his commission.  *See*. *Luck*, 763 So. 2d at 247.   Daniel's telephone call to Bowman (in the forum state) satisfies the overt act requirement.  *See Ex parte Alamo Title Co.*, 128 So. 3d at 713.   The argument that the call does not satisfy the overt act requirement because Hodge did not make the call misses the point of using a conspiracy theory to establish personal jurisdiction.   If Hodge had called Bowman in the forum to initiate this deal, then Hodge would certainly have the requisite minimum contacts with the forum.   Because Daniel made the call on behalf of Hodge Management and Air Bear (Hodge's businesses), a conspiracy theory is used to impute that contact to Hodge, who was part of the alleged conspiracy.   This satisfies the due process concerns of the minimum contacts test because, although Hodge did not make the call himself, the call was placed by a co-conspirator in furtherance of the alleged conspiracy from which he was to benefit.   This was purposeful and it is reasonable for him to expect to be haled into court in Alabama should the deal go awry. The allegations and evidence of Bank of America's involvement in any conspiracy are scant;

however, the evidence does support personal jurisdiction.  In his affidavit, Bowman states he contacted Bank of America and arranged a showing of the aircraft.  (Doc. 13-1 at ¶11).  He alleges and provides documentation to support an inference that Bank of America knew he was representing Hodge Management and Air Bear in their attempt to purchase the aircraft.  (*See* docs. 1-1 and 13-1).   However, despite this knowledge, Bank of America negotiated a deal with Hodge directly for the sale of the aircraft, resulting in Bowman not receiving a commission.  (*Id.* at ¶14).  Bowman is not only asserting a conspiracy claim against Bank of America, but is also asserting an intentional interference with business relations claim.  (Doc. 1-1).  Although Bank of America contends it has no traditional contacts with Alabama, "[i]ntentional torts are such acts [that] may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum."  *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).  In *Calder*, a California plaintiff sued a Florida newspaper and two of its employees in California state court based on an allegedly libelous article about the plaintiff.  *Id.*  In affirming jurisdiction, the Court noted the nonresident employees' article was not "untargeted negligence," but rather an "intentional and allegedly tortious act" expressly aimed at the plaintiff in the forum state because the defendants knew their article would have a potentially devastating impact on the California plaintiff.  *Id.* at 789–90. The defendants knew the "brunt of the harm" to plaintiff's reputation would be suffered in California.  Thus, California was the focal point of the tort and jurisdiction was proper there based on the "effects" in California of defendants' Florida conduct.  *Id.* at 789. The Supreme Court concluded that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Id.* at 790.

Likewise, in *Licciardello*, the Eleventh Circuit reversed the district court's dismissal and found the *Caulder* effects test satisfied, when the defendant was alleged to have committed an intentional tort that was directed at causing harm in the forum, using the plaintiff's trademark name and her likeness on a website for the purpose of making money off an implied endorsement.   544 F.3d at 1287-88.   The court concluded that the unauthorized use of the trademark individually targeted the plaintiff in the forum to misappropriate her name and reputation for personal gain.  *Id.*  The Eleventh Circuit concluded that "[t]he Constitution is not offended by the exercise of . . . personal jurisdiction over [the defendant] because his intentional conduct in his state of residence was calculated to cause injury to [the plaintiff] in Florida. *See Calder,* 465 U.S. at 791 . . . .  [The defendant] cannot now claim surprise at being haled into court here. *See id.* at 789–90 . . . ."  *Id.* at 1288

Here, Bowman contends he had a contract entitling him to a broker's commission and other business relations with Hodge Management, Hodge, Daniel, and Air Bear, and Bank of America intentionally interfered with those business relations by aiding the other defendants to cut Bowman out of the sale (and thus his commission) without justification.   Hodge further contends this was done intentionally and deprived him of his commission on the sale.   The alleged harm (loss of the commission) was the result of Bank of America's intentional conduct that was targeted at Bowman in the forum.   When intentional conduct in a defendant's state of residence outside the forum was calculated to cause injury to the plaintiff in the forum, such as here, the defendant cannot claim to be surprised at being haled into court in the forum.   As such, Bank of American should have expected to be haled into court in Alabama when it allegedly aided the other defendants in cutting Bowman out of the transaction.   Therefore, the Constitution is not offended by exercising personal jurisdiction over Bank of America.

15

3.   Evaluation of the Fairness Factors

To exercise personal jurisdiction over the defendants in Alabama, it must also comport with the traditional notion of "fair play and substantial justice."  *See Int'l Shoe*, 326 U.S. at 320. This means the court must consider relevant "fairness factors," including (1) the burden to the defendants to litigate in the forum; (2) the forum's interest in adjudicating the dispute; (3) Bowman's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See World-Wide Volkswagen*, 444 U.S. 286, 292 (1980). Applying these factors, the defendants have not met its burden of showing it would be fundamentally unfair to subject them to jurisdiction in Alabama.

Although the court recognizes the defendants' burden of litigation in this forum, that burden is outweighed by the other factors.  Four of the five defendants reside in Texas and would have to travel to Alabama to litigate this case.  However, Daniel reached into this forum and initiated contact with Bowman, an Alabama resident, when he called Bowman in 2014 about Hodge Management and Air Bear's interest in purchasing the aircraft.  This began a chain of events and business dealings between the parties.  Accordingly, this court has an interest in litigating a dispute where one of its residents alleges non-resident defendants initiated a business transaction and then harmed him by cutting him out of the deal in violation of their contact.  To the extent Bowman asserts an intentional tort claim against Bank of America, he is not required to travel to the nonresident's state of residence to obtain a remedy, and Alabama has an interest in adjudicating the dispute.  There is no indication this court would afford any less effective relief than a court in another state.  Defendants have not presented a "compelling case" jurisdiction in Alabama would "violation traditional notions of fair play and substantial justice."

16

*Diamond Crystal Brands, Inc.*, 593 F.3d at 1267.  While it may have been more convenient for the defendants if Bowman had filed this action in Texas, the requirements of due process are met, and Defendants' motion to dismiss for lack of personal jurisdiction, (doc. 12) is **DENIED**.

### C. Transfer of Venue under § 1404(a) is not Warranted

Alternatively, the defendants request transfer of this action to the Northern District of Texas.  (Doc. 12).  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ."  28 U.S.C. §1404(a).  The decision to transfer a case to another district is within the sound discretion of the trial court.  *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991). When exercising its discretion, the court should undertake an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 812 (1964)).

Resolution of a §1404(a) motion is a two-step process.  First, the court must determine whether the action could "originally have been brought in the proposed transferee district court," then, the court must determine whether the action should be transferred "for the convenience of the parties [and] in the interest of justice."  *C.M.B. Foods, Inc. v. Corral of Middle Ga.*, 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005) (quoting *Folkes v. Haley*, 64 F. Supp. 2d 1152, 1155 (M.D. Ala. 1999)); *see also A.J. Taft Coal Co., Inc. v. Barnhart*, 291 F. Supp. 2d 1290, 1309 (N.D. Ala. 2003).

Bowman does not dispute that he could have brought this action in the Northern District of Texas, but instead argues convenience of the parties and witnesses and the interest of justice weigh against transfer. (*See* doc. 16).   Essentially, the court must determine whether transfer promotes greater convenience to the parties and witnesses and advances the interests of justice.

17

"The analysis under § 1404(a) requires a balancing of practical considerations, which centers on convenience of the parties and witnesses, with the interest of justice, which focuses on fairness and efficiency."  *A.J. Taft Coal Co., Inc. v. Barnhart*, 291 F. Supp. 2d 1290, 1309 (N.D. Ala. 2003).  This balancing is achieved by considering the following factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citations omitted).

### 1. Bowman's Choice of Forum

Because courts give deference to a plaintiff's selected forum, a defendant generally bears the burden of demonstrating the suggested forum is more convenient when moving for transfer pursuant to § 1404(a). *In re Ricoh Corp.*, 870 F.3d 570, 572 (11th Cir. 1989).  Here, Bowman opposes transfer and, as such, the defendants must rely on the other factors to show the Northern District of Texas is a more convenient forum and transfer is in the interest of justice.   This factor weighs in Bowman's favor.

### 2. Convenience of Witnesses, Parties, and Location of Relevant Documents/Relative Ease of Access to Sources of Proof

Next, the court considers the convenience to witnesses and parties, and the location of relevant documents and easier access to other sources of proof.  *See Lasalle Bank N.A. v. Mobile Hotel Props., LLC*, 274 F. Supp. 2d 1293, 1302 (S.D. Ala. 2003) (citing *Hutchens v. Bill Heard Chevrolet Co.*, 928 F. Supp. 1089, 1090 (M.D. Ala. 1996) (After the plaintiff's choice of forum, the convenience of the witnesses is the primary consideration in the§ 1404 analysis.).  In support of this consideration, Defendants argue that four of the six parties are located in Texas, some

18

documents are stored in Texas, and that some defendants have been "forced" to hire both Texas and Alabama counsel.  (Doc. 12 at 12).  Although four defendants reside in Texas, there is no indication that it would be unduly burdensome for them to travel to Alabama when necessary. To the contrary, these defendants are engaged in the buying and selling of aircrafts, and it is their purchase of a private aircraft that gave rise to this lawsuit.  As to the evidence, while some documents may be stored in Texas, Bowman contends there are just as many (if not more) stored in Alabama.  Moreover, it is highly likely that most of these documents are stored electronically and thus can be easily accessible from anywhere.  *See Dendy v. Decker Truck Line, Inc.*, 2:10-cv-459-MHT, 2010 WL 3398987, at *3 (M.D. Ala. Aug. 26, 2010) (stating document location may carry less weight when stored in electronic format).

       3.  Efficiency and the Interests of Justice

Looking to the totality of the circumstances and weighing the efficiency and the interest of justice of litigating this case in either the Northern District of Alabama or the Northern District of Texas, it appears litigating this case in Texas would be more burdensome to Bowman than litigating the case in Alabama would be to the defendants.  Bowman is an individual who alleges the defendants sought his help to purchase an aircraft and then wronged him by denying him hundreds of thousands of dollars in commission.  It would be onerous to force Bowman to pay the expense of litigating in Texas when, as he alleges, the defendants owe him money.

The remaining factors, the locus of operative fact, the availability of process to compel the attendance of unwilling witnesses, the relative means of the parties, and the forum's familiarity with the governing law do not weigh in favor of transfer.  To the extent that the aircraft itself is located in Texas, this is not the type of case where inspection of the aircraft is anticipated.  Furthermore, although Defendants state that "[a] majority of potential witnesses are

in Texas," (doc. 12 at 12), they do not identify any of these witnesses or even allege that there are nonparty witnesses.

Accordingly, based on the foregoing, Defendant's alternative motion to transfer venue is **DENIED**.

### IV. Conclusion

For the reasons stated above, the defendants' motion to dismiss is **DENIED**, and their alternative motion to transfer is **DENIED**.  The defendants are directed to answer the complaint in accordance with Federal Rule of Civil Procedure 12(a)(4).  The plaintiff's recently filed motion to amend the scheduling order, (doc. 22), is **GRANTED**.  The parties are **ORDERED** to file a jointed proposed amended scheduling order within seven days.

DONE this 27th day of June 2016.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE